**Affirmed as Modified; Majority and Concurring and Dissenting Opinions filed October 18, 2018.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-17-00207-CV

---

### LANDRY'S, INC. AND HOUSTON AQUARIUM, INC., Appellants

### V.

### ANIMAL LEGAL DEFENSE FUND, CARNEY ANNE NASSER, AND CHERYL CONLEY, Appellees

---

**On Appeal from the 334th District Court
Harris County, Texas
Trial Court Cause No. 2016-79698**

---

## CONCURRING AND DISSENTING OPINION

I concur in the court's judgment except for the sanctions issue. After careful review of the briefs and the record, I agree with the majority that the sanction imposed by the trial court is excessive. However, I disagree that this record supports any sanction above a nominal amount. I would reverse the portion of the trial court's order awarding sanctions against Landry's and render judgment against Landry's for

sanctions in a nominal sum. Because the majority suggests remittitur to an amount I believe is unsupported by evidence, I respectfully dissent in part.

The sanction's statutory basis is Civil Practice and Remedies Code section 27.009. It states, in relevant part:

> (a) If the court orders dismissal of a legal action under this chapter, the court shall award to the moving party:
>
> (1) court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity may require; and
>
> (2) sanctions against the party who brought the legal action as the court determines sufficient to deter the party who brought the legal action from bringing similar actions described in this chapter.

Tex. Civ. Prac. & Rem. Code § 27.009(a). Based on section 27.009(a)(2), the trial court imposed $450,000 in sanctions against Landry's, finding that such an amount was necessary to "deter Plaintiffs from filing similar actions in the future."[1] No other finding was made or requested. As the present sanction is grounded solely on section 27.009(a), our review of the award is governed by its language. *See Kinney v. BCG Attorney Search, Inc.*, No. 03-12-00579-CV, 2014 WL 1432012, at *11 (Tex. App.—Austin Apr. 11, 2014, pet. denied) (mem. op.) (TCPA sanction order reviewed under language of section 27.009).

The parties agree that an abuse of discretion standard applies to a sanction award under section 27.009. *See id.* A trial court abuses its discretion if its ruling is arbitrary, unreasonable, or without reference to any guiding rules or principles. *See Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838-39 (Tex. 2004). The Supreme Court of Texas has not identified specific

---

[1] Like the majority, I refer to appellants collectively as "Landry's." The court ordered $250,000 payable to ALDF and $200,000 payable to Conley.

factors guiding trial courts in deciding the just amount of TCPA sanctions, but the parties appear to at least agree—by their joint citations to *Kinney*—that the two-part inquiry outlined in *TransAmerican* applies. *See Kinney*, 2014 WL 1432012, at *11 (citing *Am. Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex. 2006) (per curiam)); *see also Nath v. Tex. Children's Hosp.*, 446 S.W.3d 355, 361 (Tex. 2014) (discussing *TransAmerican Nat. Gas Corp. v. Powell*, 811 S.W.2d 913 (Tex. 1991)). Under that two-part test—which I too assume applies—appellate courts must ensure that: (1) a direct nexus exists between the improper conduct, the offender, and the sanction imposed;[2] and (2) less severe sanctions would not have been sufficient to satisfy its legitimate purposes. *See Am. Flood Research*, 192 S.W.3d at 583 (citing *TransAmerican*, 811 S.W.2d at 917). Designed to safeguard due process rights, this two-part inquiry ensures that a sanction is neither unjust nor excessive. *See Nath*, 446 S.W.3d at 363.

Trial courts have substantial discretion in fixing a monetary sanction within the due process constraints articulated in *TransAmerican*. The first prong of the test ensures that a just sanction is directed against the offending conduct and visited upon the true offender. *See id*. Fairly answering this question requires trial courts to attempt to determine whether the offensive conduct is attributable to the party only, to counsel only, or to both. *See id*.

Under *TransAmerican*'s second prong, courts consider the proportionality of the sanction relative to the misconduct. *See id*. The sanction's amount must both further the sanction's legitimate purpose and not exceed a sum necessary to satisfy that purpose. *See id*.; *Am. Heritage Capital, LP v. Gonzalez*, 436 S.W.3d 865, 881 (Tex. App.—Dallas 2014, no pet.) (stating that it was trial judge's prerogative to

---

[2] *Nath*, 446 S.W.3d at 363 (citing *TransAmerican*, 811 S.W.2d at 363); *Am. Flood Research*, 192 S.W.3d at 583.

3

weigh the evidence "in determining, as a matter of discretion, how large the sanction needed to be to accomplish its statutory purpose"), *disapproved of on other grounds by Hersh v. Tatum*, 526 S.W.3d 462, 468 (Tex. 2017). A sanction should be a function of the facts presented and the purpose of the provision a court is enforcing. *See TransAmerican*, 811 S.W.2d at 920 (Gonzalez, J., concurring).

Sanctions can have many purposes, including securing compliance with a statute, rule, or order, punishing past improper conduct, or deterring future conduct. *See Nath*, 446 S.W.3d at 363; *TransAmerican*, 811 S.W.2d at 921 (Gonzalez, J., concurring) ("Sanctions can be compensatory, punitive or deterrent in nature.") (citing G. Joseph, SANCTIONS: THE FEDERAL LAW OF LITIGATION ABUSE § 16 (1989)). "The word 'sanction' has been judicially defined as 'means of enforcement'"[3] or as "'a restrictive measure used to . . . prevent some future activity.'" *Resolution Trust Corp. v. Tarrant Cty. Appraisal Dist.*, 926 S.W.2d 797, 804 (Tex. App.—Fort Worth 1996, no writ) (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2008-09 (1981)).

The stated purpose of section 27.009(a) sanctions is to "deter the party who brought the legal action from bringing similar actions described in this chapter." Tex. Civ. Prac. & Rem. Code § 27.009(a)(2). As appellees acknowledge, deterrence from "pulling the trigger so quickly on future SLAPPs" is the "overriding question," and the majority agrees that TCPA sanctions are not intended to punish a plaintiff whose claims are dismissed. At least one other court of appeals has recognized the goal of TCPA sanctions as deterrence, not punishment. *McGibney v. Rauhauser*, 549 S.W.3d 816, 836 (Tex. App.—Fort Worth 2018, pet. denied).

---

[3] *Coutlakis v. State*, 160 Tex. Crim. 249, 257, 268 S.W.2d 192, 198 (1954) (op. on reh'g) (Morrison, J., dissenting).

In analyzing a sanction, appellate courts do not rely only on the trial court's findings but must review the entire record independently to determine if the trial court abused its discretion. *Am. Flood Research*, 192 S.W.3d at 583. I think it abundantly clear that sanctions, no matter their purpose, must be supported with evidence of substantive and probative character. *See, e.g.*, *CHRISTUS Health Gulf Coast v. Carswell*, 505 S.W.3d 528, 539-41 (Tex. 2016); *Nath*, 446 S.W.3d at 361; *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009). Evidentiary support for sanctions is important because "[f]ew areas of trial court discretion implicate a party's due process rights more directly than sanctions." *See Nath*, 446 S.W.3d at 358. Sanctions are a "heavy hammer" to be wielded with "reticence." *Id.* at 363. Absent supportive evidence, a sanction is arbitrary and thus an abuse of discretion. *Cf. In re Garza*, 544 S.W.3d 836, 842 (Tex. 2018) (orig. proceeding). Indeed, without evidence to review, an appellate court cannot rationally determine whether a sanction complies with due process. *See TransAmerican*, 811 S.W.2d at 917.

Landry's challenges the sanction amount, which it contends is excessive, as well as the evidence supporting the trial court's finding that $450,000 is necessary to deter Landry's from filing similar claims in the future.[4] A sanction under section 27.009(a) must be no more severe than necessary to satisfy the stated goal of deterrence. *See* Tex. Civ. Prac. & Rem. Code § 27.009(a)(2); *Nath*, 446 S.W.3d at 363. According to Landry's, no evidence shows that it needs to be deterred from filing similar claims. A review of the record reveals no evidence that Landry's has filed lawsuits similar to this one. Appellees presented no evidence that similar lawsuits are percolating and likely forthcoming in the future, such as evidence that

---

[4] The legislature has deemed sanctions mandatory upon dismissal of a claim under chapter 27. *See* Tex. Civ. Prac. & Rem. Code § 27.009(a); *Rich v. Range Res. Corp.*, 535 S.W.3d 610, 612-14 (Tex. App.—Fort Worth 2017, pet. denied); *Cox Media Grp., LLC v. Joselevitz*, 524 SW.3d 850, 864 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

Landry's has threatened future defamation lawsuits or that other instances of alleged defamatory statements against Landry's have occurred. Appellees also offered no evidence demonstrating that the amount of attorney's fees awarded (including conditional appellate fees) is insufficient in itself to deter Landry's from filing similar actions in the future. In my view, when, as here, a TCPA plaintiff has not asserted similar claims before, and is not shown likely to do so again, substantial sanctions based solely on section 27.009(a)(2) should be rarely appropriate.

Appellees contend the sanction is supported by (1) Landry's annual profitability, (2) Landry's "shotgun" allegations, and (3) the amount of attorney's fees incurred in defending those allegations. To me, these arguments are not persuasive on the present record.

The majority regards the present sanction as similar to one rendered under Texas Civil Practice and Remedies Code chapter 10. *See* Tex. Civ. Prac. & Rem. Code §§ 10.001, 10.004. Additionally, the majority applies the *Low* factors, which Landry's cited in the trial court. *Low*, 221 S.W.3d at 620 n.5. However, I see incongruence between chapters 10 and 27 because chapter 10 explicitly contemplates a punitive component to sanctions under that chapter,[5] whereas section 27.009 does not. *See McGibney*, 549 S.W.3d at 836. Indeed, chapter 10 sanctions were at issue in *Low*, and the supreme court later characterized the *Low* factors as helpful in "determining a *penalty* for sanctionable behavior." *See Nath*, 446 S.W.3d at 372 (emphasis added). Assuming the *Low* factors apply, appellees have not shown that they support the sanction. In reaching this conclusion, I constrain my analysis to those factors appellees asserted in the trial court and addressed in our court.

---

[5] Tex. Civ. Prac. & Rem. Code § 10.004(c).

## A. Landry's alleged profitability

Appellees contend the sanction should be affirmed because Landry's is purportedly "profitable." Assuming "annual profitability" is a relevant factor in assessing the amount of TCPA sanctions, appellees presented no evidence of Landry's current annual profit. In the trial court, appellees argued Landry's was a "multi-billion dollar corporation" owned by a billionaire, Tilman Fertitta. They attached multiple media publications discussing either Landry's alleged revenues or Fertitta's putative worth. Assuming the media publications regarding Landry's are admissible evidence, they purport to show nothing more than alleged gross revenue, not current profitability.[6] Additionally, Fertitta's alleged personal wealth is not probative because he is not a party, among other reasons.

According to the majority, the trial court could have inferred that "Landry's can afford to pay the sanctions imposed." But the pleading allegations cited do not demonstrate profitability, and surmise or speculation will not suffice to withstand a due process challenge to sanctions, even assuming analogy to chapter 10 sanctions is appropriate and the *Low* factors apply. *See Unifund*, 299 S.W.3d at 97. Moreover, the question is whether the amount is no more severe than necessary to satisfy the sanction's purpose, not whether a party can "afford" to pay it.

---

[6] Gross revenue and net profit are not the same thing. "A net profit is the difference between the total receipts of a business and all the expenses incurred in carrying on the business." *Murphy v. Budget Rent-A-Car Sys., Inc.*, No. 14-95-00099-CV, 1996 WL 275072, at \*2 (Tex. App.—Houston [14th Dist.] May 23, 1996, no writ) (mem. op., not designated for publication); *see also Texaco, Inc. v. Phan*, 137 S.W.3d 763, 771 (Tex. App.—Houston [1st Dist.] 2004, no pet.).

## B. Landry's "shotgun" allegations

Appellees also argue that the present lawsuit alone constitutes enough evidence of a need to deter because of the petition's "shotgun" character.[7] But, generally, asserting multiple claims is not sanctionable. Asserting *frivolous* or *harassing* claims may be, but appellees did not argue in the trial court that sanctions should be awarded because Landry's claims were frivolous, factually groundless, or brought in bad faith. They did not cite Civil Practice and Remedies Code chapters 9 or 10, or Texas Rule of Civil Procedure 13. They did not invoke any basis for sanctions other than chapter 27. ALDF and Nasser asserted that the trial court could consider "aggravating misconduct" in assessing a sanction amount; however, they did not argue or cite evidence that Landry's engaged in any aggravating misconduct. Instead, they argued, superficially, that Landry's should either be sanctioned a "large fine" because it is a "multi-billion dollar corporation," or "relinquish" the tigers in lieu of a fine.

Appellees' failure to sufficiently develop this argument in the trial court as a basis for section 27.009 sanctions alone supports reversal. For example, appellees did not claim that Landry's filed this suit in bad faith. Therefore, to the extent a party's good or bad faith in filing an action is a factor in determining the just amount of section 27.009(a)(2) sanctions, Landry's is presumed to have filed this action in good faith and it was appellees' burden to allege and prove otherwise,[8] which they

---

[7] Landry's asserted causes of action for defamation, business disparagement, tortious interference with prospective business relations, abuse of process, and declaratory judgment. Landry's also alleged civil conspiracy. The trial court must consider the pleadings in determining whether a legal action should be dismissed. Tex. Civ. Prac. & Rem. Code § 27.006.

[8] *Nath*, 446 S.W.3d at 361; *GTE Commc'ns Sys. Corp. v. Tanner*, 856 S.W.2d 725, 730-31 (Tex. 1993); *State v. PR Invs. & Specialty Retailers, Inc.*, 180 S.W.3d 654, 670 (Tex. App.—Houston [14th Dist.] 2005) (en banc), *aff'd*, 251 S.W.3d 472 (Tex. 2008).

8

did not argue below and do not argue substantively in this court.[9]  I agree with the majority that evidence of bad faith is lacking, but that observation warrants a more consequential one:  the good faith presumption applies.

Given that Landry's is presumed to have filed its claims in good faith, I respectfully disagree with the majority's view that the decision *when* to file its claims constitutes evidence of a "willful[] . . . offense" under element (b) of the *Low* factors. *See Low*, 221 S.W.3d at 620 n.5.[10]  The first reason I disagree is because appellees have never advanced the argument.  The second reason is because there exists no evidence of an "offense" that can be characterized as willful.  The majority states that the trial judge could have inferred that Landry's filed its claims in state court fifty-nine days after appellees served their sixty-day notice letter as evidence of willfulness to "pre-empt the federal claims."  Landry's may have purposely asserted claims in state court to avoid a federal forum, but doing so is not an "offense" when the claims themselves are presumptively motivated by good faith.  The decision when or where to file suit is not sanctionable under these circumstances, so the degree of willfulness in that decision does not, in my view, support a sanction under *Low* factor element (b).

Even if we consider the decision to "pre-empt" a potential federal suit as a "willful offense," I am reluctant to justify the sanction on that ground when no evidentiary hearing has occurred to examine whether the decision is properly attributed to the client.  Establishing "willfulness" under *Low*, would entail, I believe, raising the argument in the trial court, presenting evidence on the degree of willfulness of an identifiable offense, and possibly requesting additional findings

---

[9] Instead of arguing that Landry's engaged in bad faith, ALDF acknowledges in this court that bad faith is "not the touchstone."

[10] Element (b) allows courts to consider the "degree of willfulness . . . involved in the offense." *Low*, 221 S.W.3d at 620 n.5.

under section 27.007.[11]  Appellees did none of these things, which would have assisted the trial court in performing its duty to attempt to determine whether the offensive conduct (here, the timing of Landry's claims) is attributable to a party only, to counsel only, or to both.  *See Nath*, 446 S.W.3d at 363.  This is an uneasy and opaque inquiry to be sure, *see id*., but our record reveals no effort by appellees or the trial court to undertake this required determination.[12]

Even chapter 10 sanctions, which the majority invokes by analogy, must be supported by evidence adduced at a hearing that supports a trial court's finding "about the party's or the attorney's motives and credibility."  *Gomer v. Davis*, 419 S.W.3d 470, 480 (Tex. App.—Houston [1st Dist.] 2013, no pet.).  Bad faith—and by extension, "willfulness" under *Low*—does not exist when a party merely exercises bad judgment or is negligent; rather, "it is the conscious doing of a wrong for dishonest, discriminatory, or malicious purposes."  *Mattly v. Spiegel, Inc.*, 19 S.W.3d 890, 896 (Tex. App.—Houston [14th Dist.] 2000, no pet.).  Without hearing evidence on circumstances surrounding the filing of the pleading and the signer's credibility and motives, the trial court has no evidence to determine that a pleading was filed for an improper purpose.  *See Parker v. Walton*, 233 S.W.3d 535, 539 (Tex.

---

[11] Under section 27.007,

> (a) [a]t the request of a party making a motion under Section 27.003, the court shall issue findings regarding whether the legal action was brought to deter or prevent the moving party from exercising constitutional rights and is brought for an improper purpose, including to harass or to cause unnecessary delay or to increase the cost of litigation.

Tex. Civ. Prac. & Rem. Code § 27.007(a).

[12] Because appellees' motions did not assert a willful offense or invoke section 27.007, upholding the sanction on that ground potentially raises additional due process questions regarding lack of fair notice.  *See, e.g.*, *Nolte v. Flournoy*, 348 S.W.3d 262, 271 (Tex. App.—Texarkana 2011, pet. denied).

App.—Houston [14th Dist.] 2007, no pet.) (citing *Karlock v. Schattman*, 894 S.W.2d 517, 523 (Tex. App.—Fort Worth 1995, no writ)).

Here, we lack assurance that the sanction has been "visited upon the true offender" because the trial court conducted no evidentiary hearing and appellees presented no evidence on the issues. *See Nath*, 446 S.W.3d at 363; *TransAmerican*, 811 S.W.2d at 917. Our record contains no proof as to who made the decision to file Landry's lawsuit when and where it did, or why. Evidence of motives and credibility cannot be supported by conclusory opinions, perfunctory statements,[13] or mere argument of counsel.[14] Absent an evidentiary hearing, any inference the trial court could have made as to the timing of Landry's suit amounts to nothing more than surmise or suspicion and does not overcome the good faith presumption. *See Parker*, 233 S.W.3d at 541 (rejecting timing of lis pendens filing as sufficient to overcome presumption of good faith absent evidentiary hearing).

What remains, in my view, is the assertion that some of Landry's claims lacked legal or factual support when the suit was filed. On the other hand, the majority presumes without deciding that Landry's presented clear and specific evidence to support the defamation claims, which are the crux of the suit. I would say further that the defamation claims grounded on appellees' charges that Landry's violated the Endangered Species Act were defamatory per se and not frivolous. Also, the majority notes a split in legal authority as to whether the alleged defamatory statements are subject to the judicial proceedings privilege, an affirmative defense. Thus, though we have today held that the privilege applies as a matter of law, Landry's legal position on the defense's inapplicability was not

---

[13] *Brozynski v. Kerney*, No. 10-05-300-CV, 2006 WL 2160841, at *5 (Tex. App.—Waco Aug. 2, 2006, pet. denied) (mem. op.).

[14] *See Delgado v. Kitzman*, 793 S.W.2d 332, 333 (Tex. App.—Houston [1st Dist.] 1990, no writ).

11

unfounded. Even assuming Landry's position on potentially applicable privileges had no basis in law, a court may not sanction a represented party for unfounded legal contentions. *Nath*, 446 S.W.3d at 362. In any event, this court should not engage in a claim-by-claim parsing of the petition's "degree of . . . frivolousness"[15] when, as mentioned, appellees did not see fit to do so in the trial court in support of their sanction request and thus did not fairly put these questions before the trial judge.

Ultimately, in my view, affirming this sanction on a frivolous pleading ground contravenes the statutory purpose because sanctioning a party for groundless claims is punitive and 27.009 sanctions "are not aimed to punish but rather only to deter." *McGibney*, 549 S.W.3d at 836. Additionally, groundless pleadings alone cannot serve as a foundation for this sanction when evidence of the true offender is lacking, and the sanction thus fails the first *TransAmerican* prong.

## C.    Appellees' attorney's fees and expenses

Last, citing *Kinney*, appellees argue that the sanction does not violate due process because it is proportional to the attorney's fees and expenses incurred in defending this action, which are a "guidepost" for TCPA sanctions. *See Kinney*, 2014 WL 1432012, at *12 (concluding sufficient evidence existed of economic impact of litigation in two states to serve as "guidepost" for sanction amount). Here, the total trial court attorney's fees and expenses awarded were $174,480.26; the $450,000 sanction was over 2.5 times the fees and expenses. The majority suggests remittitur of the sanction to an amount equal to the fees and expenses.

In *Kinney*, Kinney's former employer, BCG Attorney Search, Inc., sued Kinney in California for various torts, including defamation, arising out of a single internet post Kinney made after leaving BCG's employ. *Id*. at *1. The California

---

[15] *Low*, 221 S.W.3d at 620, n.5.

court dismissed the suit under California's anti-SLAPP statute and awarded Kinney $45,000 in attorney's fees. *Id*. at \*2. BCG later initiated two additional proceedings: an arbitration and a lawsuit in Texas. *Id*. at \*2 & n.3. The Texas action asserted contractual claims arising from Kinney's alleged employment contract, as well as a Lanham Act claim arising out of the same internet post at issue in the California suit. *Id*. In the Texas action, Kinney asserted a TCPA motion to dismiss, which the trial court granted. The trial court assessed a $75,000 sanction against BCG, finding that BCG brought the Texas action to harass Kinney and that the amount of the sanction was necessary to deter BCG from filing similar suits. *Id*. at \*3. The court of appeals affirmed the dismissal on the grounds that Kinney proved his affirmative defense of res judicata, and the court also affirmed the sanction. *Id*. at \*10-12.

Appellees correctly note *Kinney*'s reliance on evidence of attorney's fees incurred over the course of litigation, but the trial court (and court of appeals) in *Kinney* considered that evidence in conjunction with other evidence bearing directly on the need for deterrence. *Id*. There, the record showed "a culmination of multiple actions, including an attempted arbitration, concerning claims for the same harm asserted under various legal theories and that one of the prior actions resulted in an award of attorney's fees against BCG in the amount of $45,000," *id*. at \*12; and the trial court found that BCG brought the Texas action for the "improper purpose of harassing Kinney." *Id*. at \*3. The attorney's fees the *Kinney* court referenced included not only the fees incurred for the action that was dismissed in Texas, but also the fees incurred as a result of the preceding California action. *Id*. at \*2. As the court of appeals held, the trial court could have reasonably concluded that a lesser sanction would have been insufficient to deter future actions. *Id*. at \*12.

The circumstances in *American Heritage Capital*, another case upon which appellees rely, are similarly distinguishable. *American Heritage Capital* affirmed a

13

$15,000 TCPA sanction. *Am. Heritage Capital*, 436 S.W.3d at 881. Again, unlike the present situation, the movant in that case presented evidence of recent net profits and an email communication by the plaintiff reasonably construed as threatening additional litigation. *Id*.

The present evidence is simply not comparable to the situations in *Kinney* and *American Heritage Capital*. There exists no evidence of other prior or threatened litigation by Landry's to which the TCPA applied or might apply; there exists no finding (or evidence) of bad faith or an improper purpose in bringing the present action; and, though the majority concludes some claims were frivolous, we lack evidence that the sanction has been visited upon the offender. The gravamen of appellees' request in the trial court was to sanction Landry's because it is a "multi-billion dollar corporation," and even that contention was unsupported by proof. The record in this case is more analogous to those instances when a nominal sanction, or no sanction, was awarded due to the lack of deterrence evidence. *See McGibney*, 549 S.W.3d at 836 (vacating $150,000 sanction as excessive and impermissibly punitive; "meager" evidence of deterrence); *cf. Rich*, 535 S.W.3d at 612-14 (trial court awarded no sanctions; court affirmed on grounds of no evidence of need for deterrence; though sanctions mandatory, record supported only nominal amount and court's failure to assess nominal sanctions was harmless error); *Tatum v. Hersh*, No. 05-14-01318-CV, 2018 WL 1477597, at *5-6 (Tex. App.—Dallas Mar. 27, 2018, no pet.) (same).

In my view, the evidence before the trial court is not sufficiently probative of the deterrence interest articulated in the statute, and it cannot support a finding that the sanction amount awarded by the trial court, or the reduced amount suggested by the majority, is necessary to deter Landry's from filing similar actions in the future. The record reveals no proof that the sanction advances section 27.009(a)(2)'s

deterrence interest or, assuming it does, that a sanction in the amount imposed (or suggested as a remittitur) is of the minimum severity "to deter [Landry's] from filing similar actions in the future."

Though appellees did not advance a groundless pleading argument in the trial court, and the trial court made no such finding, sanctions for groundless pleadings have been moderate, *see Nath*, 446 S.W.3d at 364 (collecting cases), and even the remittitur amount the majority suggests is well above the median discussed in *Nath*. We should be especially cautious in upholding a much more substantial sanction, such as the one at issue, when a (partially) deficient pleading is not coupled with any proof bearing on the TCPA's explicit deterrence goal because the court cannot determine whether the sanction is "sufficient to deter the party who brought the legal action from bringing similar actions described in this chapter." Tex. Civ. Prac. & Rem. Code § 27.009(a)(2).

In sum, the sanction fails both *TransAmerican* prongs. It fails the first prong for the reasons stated in section B. It fails the second prong for the reasons stated in sections A and C.

I am not persuaded that the evidence presented here is sufficient to support more than a nominal sanction. *See McGibney*, 549 S.W.3d at 836; *Rich*, 535 S.W.3d at 612-14; *Tatum*, 2018 WL 1477597, at *5-6. Therefore, I would reverse the portion of the trial court's order awarding sanctions against Landry's and render judgment against Landry's for sanctions in a nominal sum.[16]

---

[16] A remand is unnecessary. *See CHRISTUS Health Gulf Coast*, 505 S.W.3d at 540-41.

For these reasons, I respectfully dissent in part from the court's opinion and judgment.


/s/     Kevin Jewell
        Justice


Panel consists of Justices Christopher, Donovan, and Jewell (Christopher, J., majority).