**AFFIRMED in part; REVERSE and REMAND in part; and Opinion Filed September 4, 2020**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-19-00686-CV**

**KEEL RECOVERY, INC., REBECCA ARION, AND BILLY RAY KEEL, Appellants**
**V.**
**TRI COUNTY ADJUSTERS, INC., TRACY PETERS, ET UX. SHELLEY PETERS, Appellees**

**On Appeal from the 380th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 380-00107-2019**

## MEMORANDUM OPINION

Before Chief Justice Burns and Justices Partida-Kipness and Nowell
Opinion by Chief Justice Burns[1]

Keel Recovery, Inc. Rebecca Arion, and Billy Ray Keel (the Keel defendants)

appeal the trial court's order denying in part their anti-SLAPP motion to dismiss. In

three issues, the Keel defendants argue the trial court erred in denying the Keel

defendants' motion to dismiss Tri County Adjusters, Tracy Peters, and Shelley

---

[1] The Honorable David Bridges, Justice, participated in the submission of this case; however, he did not participate in the issuance of this opinion due to his death on July 25, 2020. Chief Justice Burns has reviewed the record and the briefs in this cause.

Peters' (plaintiffs) claims of breach of fiduciary duty and aiding and abetting. In their third issue, the Keel defendants argue this case should be remanded to the trial court for consideration of their claim for attorney's fees in relation to the dismissal of their breach of fiduciary duty and aiding and abetting claims. We reverse the trial court's order to the extent it denied the Keel defendants' motion to dismiss plaintiffs' breach of fiduciary duty and aiding and abetting claims, render judgment dismissing plaintiffs' breach of fiduciary duty and aiding and abetting claims, and remand this cause to the trial court for consideration of their claim for attorney's fees. In all other respects, the trial court's order is affirmed.

In January 2019, plaintiffs sued the Keel defendants asserting causes of action for malicious prosecution against all the Keel defendants, breach of fiduciary duty against Arion, aiding and abetting breach of fiduciary duty against Keel and Keel recovery. The petition alleged Peters and his wife, Shelley, operate Tri County Adjusters (TCA), a vehicle repossession company. In July 2016, TCA was hired by a TFS, a Florida repossession company, to repossess a truck cab, chassis, and wrecker bed on behalf of TCF, a financing company. According to the petition, TCA notified TFS that the cab, chassis, and wrecker bed had been damaged and partially dismantled by the defaulting debtor's heirs. After repossessing the cab, chassis, and wrecker bed, "TCA followed TFS's instructions concerning repairs to the cab and chassis, and secured the wrecker bed for safekeeping while waiting for further instructions from TFS."

–2–

On August 30, 2016, Peters was arrested at his home, taken into custody, and charged with third degree felony theft "based on representations made to the Collin County Sheriff's Office by a 'concerned citizen' who had extensive information about" the TFS repossession. The petition alleged the "concerned citizen" was Arion, "a disgruntled employee of TCA, who was aided and abetted by Billy Ray Keel, a former employee of TCA." The petition identified Keel as the owner and operator of Keel Recovery, "a repossession company in direct competition with TCA." The petition alleged Peters was indicted and prosecuted based on representations made by Kevin Davis "on behalf of TFS acting as an authorized agent for TCF." In February 2018, on the State's motion, "the prosecution was dismissed in the interest of justice." The petition sought "compensation for damages to their personal and business reputations, as well as loss of earning capacity in the past, as a result of the malicious prosecution initiated or procured by TFS/TCF , and [sought] TCA's lost profits as a result of Arion's fiduciary breach, aided and abetted by Keel and/or" Keel Recovery.

In February 2019, the Keel defendants filed their original answer asserting a general denial and the following affirmative defenses: (1) plaintiffs were "estopped as Tracy Peters did not prove his innocence; (2) "Tracy Peters' conduct contributed to the claims asserted against" the Keel defendants; (3) the prosecution of Tracy Peters was initiated and/or procured by a Grand Jury, not by" the Keel defendants; (4) as an intervening and superseding cause, "a Grand Jury considered and evaluated

the claims against Tracy Peters and indicted Tracy Peters; (5) the plaintiffs had unclean hands; and (6) there is a qualified privilege for persons making reports to police.

In March 2019, the Keel defendants filed their Anti-SLAPP motion to dismiss asserting that all of plaintiffs' claims were based upon their "exercise of free speech in connection with a matter of public concern, the apparent theft of property by Plaintiffs, and as such are barred by Chapter 27's design to encourage and safeguard [the Keel defendants'] constitutional rights to speak freely." The motion alleged not only that plaintiffs' claims should be dismissed but also that plaintiffs had failed to state a viable claim against the Keel defendants.

The motion alleged the following version of the facts: TCA was hired in July 2016 to repossess a 2015 F450 cab and chassis along with a wrecker bed when the debtor failed to make the required payments. TCA employee Kevin George located the truck at the debtor's property, and Peters "drove the tow truck off of the debtor's property in perfect, running and unused condition." This assertion was supported by the affidavit of Shawn Malone, the debtor's grandson, who stated the tow truck was purchased new and was stored in a garage while Malone attempted to insure it. The tow truck seats were still wrapped in plastic, and the truck itself had "less than 100 miles on it." Malone stated he gave Peters the keys to the truck, and Peters "drove it off the lot in its perfect, running, and unused condition." Malone stated he later spoke with the police about the truck and its condition.

Also attached to the motion was the affidavit of Ryan Ashley Thompson, an employee of the debtor. Thompson's affidavit stated that, while the debtor's family attempted to insure the truck, it was stored in a garage and had "approximately 60 miles on it." Thompson stated Peters picked up the "never-used wrecker" and "drove it off the lot in its perfect, running and unused condition." Thompson stated he later spoke with police about the truck and its condition.

The motion alleged Peters drove the truck to TCA's fenced yard in McKinney and then to "his back yard behind a storage container and covered it with a tarp." Plaintiffs' original petition also alleged Peters moved the truck to his residence when his "concerns for its safe-keeping were aroused" while it was at his business premises in McKinney. Plaintiff's petition also alleged that "Kevin George acted on Mr. Peters' instructions, detaching the wrecker bed from the chassis and placing it on a flatbed trailer at Mr. Peters' residence behind a freight container."

The Keel defendants' motion further alleged a "concerned citizen" contacted Collin County sheriff's office investigator Gerald Rutledge and reported that Peters "repossessed the wrecker and then removed the wrecker bed from the cab and chassis before taking the cab and chassis to Bob Tomes Ford." The next day, Rutledge asked a deputy to drive by Peters' residence and look for a black wrecker bed. The deputy saw the "now-separated wrecker bed behind a barn, apparently having been repositioned onto a Dodge cab. Rutledge spoke to TFS president Kevin Davis, who confirmed that TFS had subcontracted with plaintiffs to have the wrecker recovered,

but only the cab and chassis had been delivered to Bob Tomes Ford with no wrecker bed attached. The motion cited the underlying police report for the assertion that Davis "advised that he was suspicious of the transaction almost immediately because his questions directed at employees of [plaintiffs] were not answered when he called to inquire about the vehicle and his requests that photos of same be sent were not answered." On August 30, 2016, Rutledge and other officers went to Peters' residence where they served a search warrant and confirmed the separated wrecker bed was "behind a shipping container, on a flatbed trailer, covered with a black tarp."

Again citing the underlying police report, the motion alleged the officers recovered other stolen property at Peters' residence. The police report stated Tri-County Adjusters was subcontracted to recover a 2016 Kearney car hauler trailer, and TCA reported the trailer was recovered and delivered to an auction site. However, the trailer sold at auction was not a Kearney trailer, and "it was obvious that the VIN stickers were removed from the Kearney trailer and applied to a much cheaper trailer that was delivered to the auction by [TCA]." The police report stated police found at Peters' residence a Kearney trailer "with all of the identification numbers removed with the exception of one hidden sticker." The trailer was removed from the property by police, and the VIN number on the hidden sticker returned to the man who purchased the cheaper trailer at auction and had recently registered it using the Kearney trailer's VIN.

The police report also stated that a 2012 Chevrolet Malibu was recovered from the home of William Dickson, a TCA employee. Rutledge learned the Malibu was recovered by TCA at the request of Santander Financial in 2014, but the vehicle was never returned to Santander, and Santander had never been notified of its recovery. The police report concluded:

> Based on the information learned during the course of this investigation, investigator Rutledge does believe that Tracy Peters did commit the offense of theft of over $30,000.00 but under $150,000.00. Kevin Davis reported that the value of the wrecker bed was over $50,000.00 on the original invoice for the new Miller Century 312 wrecker bed, the vehicle only had 94 miles on it when dropped at Bob Tomes Ford. The KEARNEY flatbed car hauler trailer is valued at approximately $4,500.00 and a 2012 Chevrolet Malibu is valued at approximately $10,000.00.

The motion stated the results of the police investigation were provided to the Collin County district attorney's office, which presented them to grand jury that indicted Peters. The criminal case against Peters was filed and rescheduled multiple times but ultimately dismissed without prejudice.

The motion argued that, because all of plaintiffs' claims against the Keel defendants were based entirely on their "protected first-amendment statements to a law-enforcement officer investigating a potential theft," the Keel defendants were entitled to dismissal of all of plaintiffs' claims and an imposition of sanctions on plaintiffs and an award of attorney's fees under the Texas Citizens Participation Act (TCPA). On April 30, 2019, the trial court granted the Keel defendants' anti-SLAPP

motion to dismiss in part and dismissed only plaintiff's malicious prosecution claim against the Keel defendants.  This appeal followed.

In their first and second issues, the Keel defendants argue the trial court erred in denying their motion to dismiss with regard to plaintiffs' claims of breach of fiduciary duty and aiding and abetting breach of fiduciary duty.  Among other reasons, the Keel defendants argue all of their alleged actions and speech are protected under the TCPA.

The TCPA protects citizens from retaliatory lawsuits that seek to silence or intimidate them for exercising their rights in connection with matters of public concern.  *In re Lipsky*, 460 S.W.3d 579, 586 (Tex. 2015) (orig. proceeding); *see generally* TEX. CIV. PRAC. & REM. CODE §§ 27.001–.011.[2]  The stated purpose of the statute is to "encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury."  TEX. CIV. PRAC. & REM. CODE § 27.002; *see also ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898 (Tex. 2017) (per curiam).

---

[2]The Texas Legislature amended the TCPA effective September 1, 2019. Those amendments apply to "an action filed on or after" that date.  Act of May 17, 2019, 86th Leg., R.S., ch. 378, § 11, 2019 Tex. Sess. Law Serv. 684, 687.  Because this lawsuit was filed before September 1, 2019, the law in effect before September 1 applies. *See* Act of May 21, 2011, 82d Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 961–64, amended by Act of May 24, 2013, 83d Leg., R.S., ch. 1042, 2013 Tex. Gen. Laws 2499–2500.  All citations to the TCPA are to the version before the 2019 amendments took effect.

To accomplish this purpose, the statute provides a procedure to expedite dismissing claims brought to intimidate or to silence a defendant's exercise of a protected right. *Coleman*, 512 S.W.3d at 898; *see also* TEX. CIV. PRAC. & REM. CODE §§ 27.003(a), 27.005(b); *Youngkin v. Hines*, 546 S.W.3d 675, 679 (Tex. 2018). The movant bears the initial burden of showing by a preponderance of the evidence that the legal action is based on or is in response to the movant's exercise of the right of free speech, the right of association, or the right to petition. TEX. CIV. PRAC. & REM. CODE § 27.005(b); *see also S&S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018). If the movant makes this showing, the burden shifts to the nonmovant to establish by clear and specific evidence a prima facie case for each essential element of its claims. TEX. CIV. PRAC. & REM. CODE § 27.005(c); *see also Elliott*, 564 S.W.3d at 847.

We review de novo the trial court's ruling on a motion to dismiss under the TCPA. *See Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 894 (Tex. 2018); *Dyer v. Medoc Health Servs., LLC*, 573 S.W.3d 418, 424 (Tex. App.—Dallas 2019, pet. denied). "In conducting this review, we consider, in the light most favorable to the nonmovant, the pleadings and any supporting and opposing affidavits stating the facts on which the claim or defense is based." *Dyer*, 573 S.W.3d at 424; *see also* TEX. CIV. PRAC. & REM. CODE § 27.006(a). However, the plaintiff's petition is generally "the best and all-sufficient evidence of the nature of the action." *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017).

–9–

The TCPA defines the exercise of the right of free speech as "a communication made in connection with a matter of public concern." TEX. CIV. PRAC. & REM. CODE § 27.001(3). A matter of public concern includes, among other things, "an issue related to . . . health or safety," or "environmental, economic, or community well-being." Id. § 27.001(7). Reporting a crime to law enforcement and related judicial proceedings arising from prosecutions are matters of public concern. *Brady v. Klentzman*, 515 S.W.3d 878, 884 (Tex. 2017); *Fishman v. C.O.D. Capital Corp.*, No. 05-16-00581-CV, 2017 WL 3033314, at *6 (Tex. App.—Dallas July 18, 2017, no pet.) (mem. op.); *Robert B. James, DDS, Inc. v. Elkins*, 553 S.W.3d 596, 609 (Tex. App.—San Antonio 2018, pet. denied) (court agreed statements to police, even if false, were exercise of right of petition, a First Amendment right listed in the TCPA); *see Murphy USA, Inc. v. Rose*, No. 12-15-00197-CV, 2016 WL 5800263, at *3-*4 (Tex. App.—Tyler Oct. 5, 2016, no pet.) (mem. op.) (holding that the TCPA protected a criminal activity report even though the charges were dropped).

Here, all of plaintiffs' claims related to the Keel defendants' statements to police. Therefore, the Keel defendants met the initial burden of showing by a preponderance of the evidence that the legal action is based on or is in response to the movant's exercise of the right of free speech, the right of association, or the right to petition. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(b); *see also Elliott*, 564 S.W.3d at 847. The burden shifted to plaintiffs to establish by clear and specific

–10–

evidence a prima facie case for each essential element of their claims. TEX. CIV. PRAC. & REM. CODE § 27.005(c); *see also Elliott*, 564 S.W.3d at 847.

To prevail on a breach-of-fiduciary-duty claim, a party must prove the existence of a fiduciary duty, breach of the duty, causation, and damages. *Las Colinas Obstetrics–Gynecology–Infertility Ass'n v. Villalba*, 324 S.W.3d 634, 645 (Tex. App.—Dallas 2010, no pet.). An employee may not, without breaching his fiduciary duties, "(1) appropriate the company's trade secrets, (2) solicit the former employer's customers while still working for his employer, (3) solicit the departure of other employees while still working for his employer; or (4) carry away confidential information." *Wooters v. Unitech Int'l, Inc.*, 513 S.W.3d 754, 762–63 (Tex. App.—Houston [1st Dist.] 2017, pet. denied).

Our review of the record shows that plaintiffs did not establish by clear and specific evidence a prima facie case for each essential element of any such claim. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(c); *see also Elliott*, 564 S.W.3d at 847. Specifically, while Arion may have had a fiduciary duty to her employer, TCA, that does not mean she owed any fiduciary duty to Peters as owner of TCA. Arguably, to the extent Arion owed TCA a fiduciary duty, that duty was fulfilled by reporting Peters' criminal activity that could subject TCA to negative consequences. In their response to the Keel defendants' motion to dismiss, plaintiffs alleged Arion breached her fiduciary duty to TCA because Rutledge had such detailed information that only an "insider" at TCA could have "started this ball rolling; the only insider motivated

–11–

to do so at the time was Arion, and the only individuals or entities that Arion's doing so would benefit directly, known to Arion, were Keel and KRI." In support of this assertion, plaintiffs cited only portions of Peters' own affidavit in which he stated Arion "reacted very badly" to Peters' being "markedly unsympathetic" to the wife of another TCA employee injured in a collision. Peters' affidavit stated he "believe[d] Ms. Arion's anger motivated her to act vengefully towards [Peters], and she was aided in this vengeful act by her uncle Mr. Keel, who is a business competitor of [Peters'], and thus motivated to damage my reputation." Far from establishing by clear and specific evidence a prima facie case that Arion breached her fiduciary duty to TCA, this evidence only shows what Peters "believe[s]." Moreover, these assertions ignore the fact that the report to Rutledge did reveal evidence of theft for which he was subsequently indicted by a grand jury. Because plaintiffs failed to establish Arion breached her fiduciary duty, we further conclude plaintiffs failed to establish any of the other Keel defendants aided and abetted Arion in any such breach of fiduciary duty. , LLC *See Super Starr Int'l, LLC v. Fresh Tex Produce, LLC*, 531 S.W.3d 829, 847 (Tex. App.—Corpus Christi-Edinburg 2017, no pet.) ("Generally, when a breach of fiduciary duty claim fails, so should an aiding and abetting in the breach of fiduciary duty claim, to the extent one exists in Texas."). Under the facts and circumstances of this case, we conclude the trial court erred in failing to dismiss all of plaintiffs' claims against the Keel defendants. *See*

TEX. CIV. PRAC. & REM. CODE § 27.005(c); *see also Elliott*, 564 S.W.3d at 847. We sustain the Keel defendants' first and second issues.

In their third issue, the Keel defendants argue this case should be remanded to the trial court to consider their claims for attorney's fees in relation to the dismissal of plaintiffs' breach of fiduciary duty and aiding and abetting claims. We agree. Section 27.009 of the civil practices and remedies code requires a court to award court costs and reasonable attorney's fees to the moving party if the court dismisses the legal action under Chapter 27. TEX. CIV. PRAC. & REM. CODE § 27.009(a). The statute also mandates sanctions "as the court determines sufficient to deter" the filing of similar actions. *See id.* We sustain the Keel defendants' third issue.

Accordingly, we reverse the trial court's order denying the Keel defendant's motion to dismiss and render judgment dismissing all of plaintiffs' claims. We remand the case to the trial court to award the amount of reasonable attorney's fees, costs, or expenses that justice and equity may require, impose sanctions, if any, sufficient to deter future similar conduct, and for further proceedings consistent with this opinion. *See Tatum v. Hersh*, 559 S.W.3d 581, 586 (Tex. App.—Dallas 2018, no pet.) ("Appellate courts generally remand the fee issue when a trial court has

erroneously denied a Chapter 27 dismissal motion.").  In all other respects, the trial court's order is affirmed.


/Robert D. Burns, III/
ROBERT D. BURNS, III
CHIEF JUSTICE


190686F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

KEEL RECOVERY, INC.,
REBECCA ARION, AND BILLY
RAY KEEL, Appellants

No. 05-19-00686-CV     V.

TRI COUNTY ADJUSTERS, INC.,
TRACY PETERS, ET UX.
SHELLEY PETERS, Appellees

On Appeal from the 380th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 380-00107-2019.
Opinion delivered by Chief Justice
Burns. Justices Partida-Kipness and
Nowell participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** that portion of the trial court's judgment denying the motion to dismiss of Keel Recovery, Inc., Rebecca Arion, and Billy Ray Keel and **RENDER** judgment dismissing all claims of Tri County Adjusters, Inc., Tracy Peters et ux. Shelley Peters. In all other respects, the trial court's judgment is **AFFIRMED**. We **REMAND** this cause to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that appellants Keel Recovery, Inc., Rebecca Arion, and Billy Ray Keel recover their costs of this appeal from appellees Tri County Adjusters, Inc., Tracy Peters et ux. Shelley Peters.

Judgment entered September 4, 2020.

–15–